# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROSA CASTELLANOS, on behalf of herself and others similarly situated,<br>c/o Handley Farah & Anderson PLLC<br>777 6th Street NW<br>Eleventh Floor<br>Washington, DC 20001<br><br>      Plaintiff,<br><br>  v.<br><br>WEBSTER & SONS TRUCKING, INC.<br><br>a Virginia corporation,<br><br>    Serve: Alex Webster<br>          1585 Wood Duck Court<br>          Woodbridge, VA 22191<br><br>ALEX WEBSTER,<br>1585 Wood Duck Court<br>Woodbridge, VA 22191<br><br>    Service At:<br>      1585 Wood Duck Court<br>      Woodbridge, VA 22191<br><br>And TATIANA WEBSTER,<br>1585 Wood Duck Court<br>Woodbridge, VA 22191<br><br>    Service At:<br>      1585 Wood Duck Court<br>      Woodbridge, VA 22191<br><br>      Defendants. | Civil Action No.: 1:20-cv-457<br><br>Collective Action Complaint |

## COLLECTIVE ACTION COMPLAINT

1. This is a collective action for unpaid wages and overtime under Federal, District of Columbia and Maryland law. Plaintiff Rosa Castellanos, individually and on behalf of all others similarly situated, by and through her undersigned attorneys, brings suit against her employers Webster & Sons Trucking, Inc. ("Webster & Sons), Alex Webster, and Tatiana Webster (collectively, "Defendants,") for their failure to pay their employees legally mandated wages in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"), the D.C. Minimum Wage Revision Act ("DCMWA"), D.C. Code § 32-1002 *et. seq.*, the D.C. Wage Payment and Collection Law ("DCWPCL"), D.C. Code § 32-1301 *et seq.*,the Maryland Wage and Hour Law ("MWHL"), Md. Code, Lab. & Empl. § 3-401 *et seq*., and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code, Lab. & Empl. § 3-501 *et seq.*

## JURISDICTION AND VENUE

2. The Court has jurisdiction over Defendants pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), and 28 U.S.C. § 1337(a) relating to "any civil action or proceeding arising under an Act of Congress regulating commerce." Subject matter jurisdiction is invoked under 28 U.S.C. § 1331. This court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a) because those claims arise from a common set of operative facts and are so related to the claims in the action within the original jurisdiction of the Court that they form part of the same case or controversy.

3. Venue is proper in the District of Columbia because a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred there. *See* 28 U.S.C. § 1391(b)(2).

## PARTIES

4. Plaintiff Rosa Castellanos is an adult resident of Fairfax County, Virginia. In 2018, she was employed as a cleaning worker by Defendants.

5. Defendant Webster & Sons Trucking, Inc. is a Virginia corporation that provides commercial cleaning and trash removal services to businesses in the Washington, D.C. metropolitan area. Webster & Sons' administrative office is located at 5881 Leesburg Pike, Falls Church, Virginia 22042.

6. Upon information and belief, Defendants Alex Webster and Tatiana Webster are the owners and operators of Webster & Sons.

7. On information and belief, at all relevant times, Defendants had at least two employees who were engaged in interstate commerce, or who handled, sold, or otherwise worked on goods or materials that moved in interstate commerce.

8. On information and belief, at all relevant times, the annual gross volume of Defendants' business exceeded $500,000.

## FACTS

9. Plaintiff Castellanos worked for Webster & Sons from approximately early March 2018 through November 29, 2018.

10. Ms. Castellanos and other similarly situated employees performed a variety of cleaning and waste removal tasks for Defendants in Washington, D.C., Maryland, and Virginia. Ms. Castellanos primarily cleaned commercial buildings that were under construction or renovation. Her duties included cleaning windows, sweeping, mopping, vacuuming, and peeling away old paint. She also helped remove construction waste from the interior of the buildings to exterior dumpsters.

11. Ms. Castellanos occasionally helped unload worksite construction waste at a dump located in Virginia.

12. Occasionally, Ms. Castellanos cleaned Webster & Sons' trucks at a location in Maryland where the company keeps its dumpsters.

13. Working alongside Ms. Castellanos at Webster & Sons were approximately ten other co-workers, who all performed similar work.

14. Alex Webster and Tatiana Webster directly controlled the work of Plaintiff and others similarly situated. They instructed the employees where and when to work and what work to perform. They were also in charge of compensating Ms. Castellanos and others similarly situated for their work.

15. Defendant Tatiana Webster and an individual named Alberto oversaw the company's cleaning work. Tatiana Webster was often present at Ms. Castellanos' worksite and gave her and others similarly situated instructions and feedback on their work.

16. Defendants provided Ms. Castellanos and others similarly situated tools required to perform their work, such as a vacuum, broom, mop, and cleaning liquid.

17. Ms. Castellanos left her job at Webster & Sons after completing her workday on November 29, 2018.

**Work Schedule and Worksite Locations**

18. Ms. Castellanos and others similarly situated generally worked six days per week, from Sunday to Friday.

19. During weekdays, Ms. Castellanos and others similarly situated were required to arrive at Webster & Son's office at 5881 Leesburg Pike, Falls Church, Virginia at approximately 5

A.M., where Tatiana Webster and Alex Webster gave the employees their daily work instructions.

20. After receiving instructions, Ms. Castellanos and the other workers were transported in a company van to various worksites.

21. Ms. Castellanos and others similarly situated often worked at multiple worksites in one day. On days where they worked at multiple sites, they were transported between worksites in the company van.

22. The time Ms. Castellanos and others similarly situated completed their work varied from day to day depending on the workload.

23. Ms. Castellanos and others similarly situated had to store their work tools and supplies in the company van at the end of each workday. They would often have to wait outside the final worksite after finishing work for the van to arrive.

24. On Sundays, Ms. Castellanos and others similarly situated performed work at a hospital complex in Montgomery County, Maryland. They reported to the Webster & Sons office in the morning – at a time that varied from week to week – and from there were transported to the Maryland worksite. Ms. Castellanos did not travel to any other worksites on Sundays and did not have to wait for the van to arrive at the end of the workday.

25. Upon information and belief, Ms. Castellanos and others similarly situated spent at least 50% of their time working in Washington, D.C.

26. Most weekday mornings, Ms. Castellanos's first worksite was located in Washington, D.C. Some days, she spent the entire day working in D.C. Other days, she traveled to worksites in Virginia or Maryland after working in D.C.

27. On Sundays, and occasionally during the weekday, she performed work in Montgomery Country, Maryland. On multiple occasions, Ms. Castellanos cleaned Webster & Sons' trucks in Maryland.

### Webster & Sons' Pay Practices

28. Ms. Castellanos' supervisor, Alberto, recorded the hours Ms. Castellanos and others similarly situated worked in his notebook. When Alberto was not present at Ms. Castellanos' worksite, Tatiana Webster or Alex Webster would track the employees' time and tell Alberto what hours to write in his notebook. Webster & Sons did not have an automated timekeeping machine where employees could log their hours electronically.

29. Upon information and belief, Defendants did not track, and thus did not pay, Ms. Castellanos and others similarly situated for all of their compensable work time. Upon information and belief, Defendants did not record the time for numerous compensable activities, including but not limited to: the time Ms. Castellanos and others similarly situated spent receiving instructions, traveling to the first worksite, waiting to be transported to the next worksite, traveling between worksites, waiting for the company van to arrive at the end of the day, unloading waste at the dump, or cleaning the company trucks. Upon information and belief, Ms. Castellanos and others similarly situated were only compensated for the hours recorded by Defendants, and thus were not compensated for all work time.

30. Ms. Castellanos and others similarly situated received their paychecks once a week on Saturday, their only day off. Alberto, Tatiana Webster, or Alex Webster distributed the checks to workers at the Webster & Sons office. Ms. Castellanos sometimes had to wait approximately 30 minutes to one hour to receive payment.

### Webster & Sons Did not Pay Ms. Castellanos and Others Similarly Situated the Proper Wage Rate

31. During the entirety of her employment with Webster & Sons, Ms. Castellanos received an hourly rate of pay of $10 per hour. Her wages for each pay period fluctuated depending on the number of hours she worked. Upon information and belief, Defendants paid workers who primarily performed cleaning work at a rate of $10 per hour and paid worked who primarily performed waste removal work at a rate of $12 per hour.

32. Webster & Sons paid Ms. Castellanos and, upon information and belief, others similarly situated, less than the applicable minimum wage for work performed in Montgomery County, Maryland, and in Washington, D.C. The minimum wage in Washington D.C. from March through June 2018 was $12.50 per hour; it increased to $13.25 per hour on July 1, 2018. The minimum wage in Montgomery County, Maryland for small and medium-sized businesses was $11.50 per hour for the first half of 2018 and $12.00 for the second half of 2018. Montgomery County Code, § 27-68.

33. Webster & Sons paid Ms. Castellanos and, upon information and belief, others similarly situated the same wage rate regardless of the location of the where the work was performed.

### Webster & Sons Failed to Pay Ms. Castellanos and Others Similarly Situated for All Hours Worked

34. Upon information and belief, Webster & Sons did not pay Ms. Castellanos and others similarly situated for all their compensable work time, including but not limited to time spent receiving work instructions at the office each morning, traveling to the first worksite, waiting to travel to another worksite, traveling between worksites during the course of the workday, traveling to and from the dump, unloading waste at the dump, cleaning waste hauling trucks,

7

and waiting for the company van – where workers stored work materials – to arrive at the end of the workday.

35. Alberto informed Ms. Castellanos on multiple occasions that Webster & Sons only compensated her for time spent cleaning buildings.

36. Some weeks, Ms. Castellanos was not even compensated for all of the hours she spent cleaning. She occasionally complained to Alberto about the missing hours. At one point, he told her that if she did not like it, she could leave.

**Webster & Sons Failed to Pay Overtime and Made Unlawful Wage Deductions**

37. Ms. Castellanos and, upon information and belief, others similarly situated, routinely worked over 40 hours per week. Defendants paid Ms. Castellanos and, upon information and belief, others similarly situated the same wage rate for every hour worked, including overtime hours.

38. At no time during Ms. Castellanos' employment did the Defendants pay her an overtime premium, despite the fact that the Defendants directed her to work more than 40 hours per week and were well aware that she worked overtime, as demonstrated by her check stubs.

39. On information and belief, the Defendants made no effort whatsoever to pay Ms. Castellanos and others similarly situated overtime even though it was patently obvious that the Defendants were out of compliance with federal & state law.

40. Webster & Sons required Ms. Castellanos and, upon information and belief, others similarly situated to bear the cost of some work-related tools and materials. Ms. Castellanos purchased tools required to perform her job – including a cloth to clean glass, a safety vest, gloves, a knife for removing old paint, and a dust mask – because Webster & Sons failed to provide

them. Some of the worksites were so dusty from construction and renovation that Ms. Castellanos struggled to breathe.

41. In November 2018, Webster & Sons required Ms. Castellanos and others similarly situated to wear a uniform to work. The Defendants provided Ms. Castellanos a uniform and deducted a total of $27 for two pay checks for the cost of the uniform.

## COLLECTIVE ACTION ALLEGATIONS

42. This action is maintainable, as to the FLSA and D.C. law claims, as an opt-in collective action pursuant to 29 U.S.C. § 216(b) and D.C. Code § 32-1308(a)(i)(C).

43. Defendants failed to compensate Plaintiff and all others similarly situated hourly employees. Plaintiff and similarly situated employees were not paid for all compensable time, were at times paid below the applicable minimum wage, were not compensated at one-and-a-half times their regular rate of pay for those hours worked in excess of forty in any one workweek, and had unlawful deductions taken from their pay.

44. Defendants' conduct was willful, repeated, knowing, and intentional.

45. This action can, and should, be maintained as a collective action for all claims to unpaid wages and unpaid overtime that can be redressed under the FLSA, DCMWA, and the DCWPCL.

46. For those claims that can be certified as a collective action, Plaintiff seeks certification as a collective action on behalf of all hourly employees of Defendants who were not compensated properly in any the following ways (1) failure to compensate for all hours worked, (2) failure to compensate at the applicable minimum wage rate, (3) failure to compensate at one-and-a-half times the regular rate of pay (or the applicable minimum wage) for those hours worked in excess of forty in any one workweek, and (4) unlawful deductions from pay, at any time

from the earliest date actionable under the limitations period applicable to the given claim until the date of judgement.

47. On information and belief, there are at least 10 similarly situated current and former employees of Defendants who have been subjected to the same unlawful conduct that Plaintiff challenges herein.

48. Members of the proposed collective action are similarly situated.

49. Members of the proposed collective action have been subjected to the same or substantially the same pay policies and practices.  The identities of the members of the proposed collective action are known to Defendants and can be located through Defendants' records.

50. Plaintiff hereby consents to be a party plaintiff in this action under 29 U.S.C. § 216(b).

## CLAIMS

### COUNT I: VIOLATION OF THE FEDERAL FAIR LABOR STANDARDS ACT (FLSA) –OVERTIME

51. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

52. The FLSA requires employers to pay non-exempt employees an overtime premium of one and one half times their regular hourly rate for hours worked in excess of 40 hours in any one work week.

53. Defendants violated the FLSA by knowingly failing to pay Plaintiff and other similarly situated individuals one and one half times their regular hourly rate for hours worked in excess of 40 hours in any one work week.

54. Plaintiff and similarly situated individuals were "employees" and Defendants were "employers" under the FLSA § 203.

55. Defendants' violations of the FLSA were repeated, knowing, willful, and intentional.

56. WHEREFORE, Defendants are liable to Plaintiff, and all other similar situated individuals, under the FLSA, 29 U.S.C. § 216(b), for all unpaid wages and unpaid overtime wages, plus an equal amount in liquidated damages, attorney's fees, costs, and any other and further relief this Court deems appropriate.

## COUNT II: VIOLATION OF THE D.C. MINIMUM WAGE REVISION ACT ("DCMWA") – MINIMUM WAGE AND OVERTIME

57. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

58. Upon information and belief, Plaintiff, and others similarly situated, regularly spent more than 50% or their working time in the District of Columbia.

59. Plaintiff, and others similarly situated, were "employees" and Defendants were their "employers" under the DCMWA, D.C. Code § 32-1002 *et. seq.*

60. Section 32-1003(a)(5)(A) of the DCMWA sets the minimum hourly wage rate at $12.50 from July 1, 2017 through June 30, 2018, and at $13.25 from July 1, 2018 through June 30, 2019.

61. Section 32-1003(c) of the DCMWA provides that "[n]o employer shall employ any employee for a workweek that is longer than 40 hours, unless the employee receives compensation for employment in excess of 40 hours at a rate not less than 1 ½ times the regular rate at which the employee is employed."

62. Defendants violated the DCMWA by knowingly failing to compensate Plaintiff, and all other similarly situated individuals, the minimum hourly rate and an overtime rate of time-and-one-half (1½) their regular hourly rate for every hour worked in excess of forty (40) in any one workweek.

63. Defendants' violations of the DCMWA were repeated, willful, intentional, and in bad faith.

64. WHEREFORE, Defendants are liable to Plaintiff, and all other similarly situated individuals, under the DCMWA, D.C. Code § 32-1012, for all unpaid overtime wages, plus liquidated damages, attorney's fees, costs, and any further relief that this Court deems appropriate.

### COUNT III: VIOLATION OF THE MARYLAND WAGE
### AND HOUR LAW (MWHL) – OVERTIME AND MINIMUM WAGE

65. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

66. Plaintiff was an "employee" and Defendants were her "employers" under the MWHL, Md. Code, Lab. & Empl. § 3-401.

67. Section 3-413 of the MWHL sets the minimum hourly wage rate at $9.25 from July 1, 2017 through June 30, 2018, and at $10.10 beginning July 1, 2018.

68. As employers of the Plaintiff, Defendant was obligated to pay the Plaintiff at the rate of one and one-half (1½) times Plaintiff's usual hourly wage for hours worked each week in excess of forty (40) under the MWHL, Md. Code, Lab. & Empl. §§ 3-415, 420.

69. Defendants violated the MWHL by failing to compensate Plaintiff the minimum hourly rate and an overtime rate of time-and-one-half (1½) her regular hourly rate for every hour worked in excess of forty (40) in any one workweek.

70. Defendants' violations of the MWHL were repeated, willful, intentional, and in bad faith.

71. The wages Defendants withheld from Plaintiff were not withheld as the result of a bona fide dispute.

72. WHEREFORE, Defendants are liable to Plaintiff, under the MWHL, for all unpaid overtime wages, liquidated damages, attorney's fees, costs, and any other further relief this court deems appropriate.

## COUNT IV: VIOLATION OF THE D.C. WAGE PAYMENT
## AND COLLECTION LAW (DCWPCL) – UNPAID WAGES

73. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

74. Plaintiff and all those similarly situated were "employees" and Defendants were their "employers" under the DCWPCL, D.C. Code § 32-1301.

75. Under the DCWPCL, D.C. Code § 32-1302, Defendants were required to pay Plaintiff and all those similarly situated all wages due for work performed.

76. Defendants failed to timely pay Plaintiff and all those similarly situated all wages due for the hours they worked, including overtime wages, in violation of the DCWPCL, D.C. Code § 32-1302.

77. Defendants' violations of the DCWPCL were repeated, willful, and intentional.

78. WHEREFORE, Defendants are liable to Plaintiff and all those similarly situated under the DCWPCL, D.C. Code § 32-1308, for their unpaid wages, liquidated damages, attorneys' fees, costs, and any other further relief this court deems appropriate.

## COUNT V: VIOLATION OF THE MARYLAND WAGE
## PAYMENT AND COLLECTION LAW (MWPCL) – UNPAID WAGES

79. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

80. Defendants were the "employers" of Plaintiff under the MWPCL, Md. Code, Lab. & Empl. § 3-501.

81. Under the MWPCL, Md. Code, Lab. & Empl. § 3-502, Defendants were required to pay Plaintiff all wages for work performed.

82. Defendants failed to timely pay Plaintiff her required wage rate for all the hours she worked, including overtime wages, in violation of the MWPCL, Md. Code, Lab. & Empl. § 3-502.

83. Defendants violations of the MWPCL were repeated, willful, and intentional.

84. The wages Defendants withheld from Plaintiff were not withheld as the result of a bona fide dispute.

85. WHEREFORE, Defendants are liable to Plaintiff under the MWPCL, § 3-507.2, for her unpaid wages, liquidated damages, attorney's fees, costs, and any other further relief this Court deems appropriate.

**PRAYER FOR RELIEF**

86. WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against all Defendants on all counts, jointly and severally, and grant the following relief:

    a. Award Plaintiff and all similarly situated individuals:

        i. unpaid wages, plus an equal amount as liquidated damages, pursuant to the FLSA, 29 U.S.C § 216;

        ii. unpaid wages, plus an amount equal to three times the amount of unpaid wages earned as liquidated damages, pursuant to the DCMWA, D.C. Code § 32-1012;

        iii. unpaid wages, plus an amount equal to three times the amount of unpaid wages as liquidated damages, pursuant to the DCWPCL, D.C. Code §§ 32-1303(4) and 32-1308;

    b. Award Plaintiff:

        iv. unpaid wages, plus an equal amount as liquidated damages, pursuant to the MWHL, Md. Code, Lab. & Empl. § 3-427;

        v. unpaid wages equaling three times the amount of wages owed pursuant to

      the MWPCL, Md. Code, Lab. & Empl. § 3-507.2;

c. Award Plaintiff reasonable attorneys' fees and expenses incurred in the prosecution of this action;

d. Award Plaintiff the costs incurred in the prosecution of this action;

e. Award any additional relief the Court deems just.

Dated:  2/18/2020

                Respectfully submitted,

                /s/ Matthew K. Handley
                Matthew K. Handley, D.C. Bar No. 489946
                Rachel Nadas, *pro hac vice* forthcoming
                Handley Farah & Anderson PLLC
                777 6th Street NW, 11th Floor
                Washington, DC 2001
                T: (202) 559-2411
                F: (844) 300-1952
                E: mhandley@hfajustice.com

                /s/ Kristin Fisher Donovan
                Kristin Fisher Donovan, *pro hac vice* forthcoming
                Legal Aid Justice Center
                6066 Leesburg Pike, Suite 520
                Falls Church, VA 22041
                T: (571) 620-5261
                F: (703) 778-3454
                E: kristin@justice4all.org